FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

'2016 JUN 22  P 4: 45

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

EMC MORTGAGE LLC f/k/a EMC
MORTGAGE CORPORATION,

    Plaintiff,

v.

FIRST GUARANTY MORTGAGE
CORPORATION,
Please Serve:
George Leroy Moran
4041 University Drive
Suite 301
Fairfax, VA 22030-3410

    Defendant.

Civil Action No. 1:16-cv- 715

## COMPLAINT

Plaintiff EMC Mortgage, LLC ("EMC") (formerly known as EMC Mortgage Corporation), by its attorneys, Nelson Mullins Riley & Scarborough LLP, for its complaint against defendant First Guaranty Mortgage Corporation ("First Guaranty"), alleges as follows:

## NATURE OF THE ACTION

1.    This case arises from First Guaranty's refusal to honor its contractual obligations to indemnify EMC for more than $5 million of defective mortgage loans that First Guaranty sold to EMC and that EMC was subsequently required to repurchase from third parties or to compensate those parties for their losses on the loans.

2.    First Guaranty sold the mortgage loans at issue in this case to EMC pursuant to mortgage loan purchase agreements executed at the time of sale: (i) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of January 29, 2002 (the "January 2002

MLPAISA"), which incorporated the EMC Seller Guide, as amended from time to time (the "Seller Guide"); (ii) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of March 28, 2002 (the "March 2002 MLPAISA"); (iii) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of April 29, 2002 (the "April 2002 MLPAISA"); (iv) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of July 1, 2002 (the "July 2002 MLPAISA"); (v) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of April 28, 2005 (the "April 2005 MLPAISA"); (vi) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of October 27, 2005 (the "October 2005 MLPAISA") and (vii) a Mortgage Loan Purchase Agreement and Interim Servicing Agreement, dated as of March 31, 2006 (the "March 2006 MLPAISA") (collectively the "MLPAs"). The MLPAs are attached hereto as Exhibits A-1 through A-7. An excerpt from the Seller Guide is attached hereto as Exhibit A-8.

3.     In the MLPAs, First Guaranty made numerous representations and warranties to EMC about the loans First Guaranty was selling. These included, among many other things, representations by First Guaranty that the origination and characteristics of the loans complied with applicable underwriting guidelines and trade stipulations, that information relating to the loans provided by First Guaranty was accurate, and that there was no fraud, error, omission, misrepresentation, negligence or similar occurrence on the part of any party involved in the origination of the loans. And in the MLPAs, First Guaranty promised, among other things, to indemnify EMC for all claims, losses, forfeitures, fees and expenses in any way relating to breaches of First Guaranty's representations and warranties.

4.     EMC purchased mortgage loans from First Guaranty for two primary purposes: (i) securitization into various residential mortgage-backed securities ("RMBS") transactions or

(ii) whole loan sales to the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"). Relying on the representations and warranties provided by First Guaranty and First Guaranty's commitment to indemnify EMC for any alleged breaches of them, when EMC sold the loans it had purchased from First Guaranty to RMBS trusts or GSEs, EMC made representations and warranties to the RMBS trusts and GSEs that were materially identical to (and in some instances narrower than) the representations and warranties that First Guaranty made to EMC about the same loans.

5.     Pursuant to the agreements governing EMC's resale of the First Guaranty loans to the RMBS trusts and GSEs, in the event that any party discovered a breach of the representations and warranties as to any loan, which defect could not be cured, and such breach had the requisite affect on the interest of the RMBS trust or the GSE, the governing contracts obligated EMC to repurchase the defective loan or to compensate the RMBS trust or GSE for its losses on that loan.

6.     It turns out that First Guaranty's representations and warranties to EMC were in many respects not true. As a result, EMC was required to repurchase a significant number of First Guaranty's loans from RMBS trusts and the GSEs or to compensate them for their losses on the loans at a cost of more than $5,588,563.00, before adding interest and the substantial fees and expenses that EMC incurred in addressing those breaches.

7.     A list of loans sold by First Guaranty to EMC pursuant to the MLPAs, and subsequently sold to RMBS trusts or GSEs, and for which EMC seeks indemnification as a result of EMC's repurchase of, or compensation for, defective loans, is attached hereto as Exhibit B. The original principal balance of these loans in aggregate exceeds $8,644,990.00.

8.      First Guaranty has refused to indemnify EMC for the losses resulting from these breaches and the damages that EMC has incurred as a result, despite its obligation to do so.

## THE PARTIES

9.      EMC is a limited liability company organized under the laws of the State of Delaware, and its principal place of business is Lewisville, Texas. EMC's sole member is The Bear Stearns Companies LLC, whose sole member is JPMorgan Chase & Co. JPMorgan Chase & Co. is a Delaware corporation with its principal place of business in New York and is therefore a citizen of Delaware or New York, as defined by 28 U.S.C. § 1332. Accordingly, EMC is a citizen of Delaware or New York. At all relevant times, EMC was in the business of purchasing residential mortgage loans and sponsoring securitizations of such loans.

10.     Defendant First Guaranty is a Virginia corporation with its principal place of business in Tysons Corner, Virginia. At all relevant times, First Guaranty was in the business of originating and selling residential mortgage loans.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest and there is complete diversity of citizenship.

12.     This Court has personal jurisdiction over First Guaranty because First Guaranty is organized under the laws of Virginia and First Guaranty has its principal place of business in Virginia.

13.     Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 because First Guaranty resides in this venue and is subject to personal jurisdiction here.

## FACTUAL BACKGROUND

14.    At various times from 2002 through 2006, First Guaranty and EMC executed the MLPAs pursuant to which EMC purchased mortgage loans from First Guaranty. The MLPAs included numerous representations and warranties made by First Guaranty regarding the characteristics of the loans sold and the manner in which they were originated.

15.    As a correspondent lender, First Guaranty was responsible for locating and collecting information from the borrower, verifying its accuracy, and underwriting the loans based on the agreed-upon guidelines, and funding the loans. First Guaranty was the servicer of the loans until they were sold to EMC.

16.    In the MLPAs, First Guaranty agreed to indemnify EMC for *any losses* suffered by EMC in any way related to any breaches of the representations and warranties it made to EMC:

- "... the Company shall indemnify the Purchaser ... and hold [it] harmless against actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7." January 2002 MLPAISA § 7.03; March 2002 MLPAISA § 7.03; April 2002 MLPAISA § 7.03; July 2002 MLPAISA § 7.03; April 2005 MLPAISA § 7.03; October 2005 MLPAISA § 7.03; March 2006 MLPAISA § 7.03.

- "The Company agrees to indemnify the Purchaser . . . and hold [it] harmless from and against actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein." January 2002 MLPAISA § 12.01; March 2002 MLPAISA § 12.01; April 2002 MLPAISA § 12.01; July 2002 MLPAISA § 12.01; October 2005 MLPAISA § 12.01; March 2006 MLPAISA § 12.01.

- "[i]n addition to such cure and repurchase obligation, the Seller shall indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11." (Seller's Guide § 11.03.02)

17.   In reliance on First Guaranty's representations and warranties in the MLPAs, and on First Guaranty's promise to indemnify it for losses incurred as a result of First Guaranty's sale of loans in breach of those representations and warranties, EMC purchased mortgage loans from First Guaranty.

18.   When it sold loans to EMC, First Guaranty was fully aware that EMC intended to securitize some or all of the loans or sell them to third parties, including RMBS trusts and the GSEs. First Guaranty was fully aware that, in connection with those transactions, EMC would make representations and warranties similar to those First Guaranty provided to EMC. In fact, First Guaranty explicitly acknowledged this in the MLPAs:

- "The Company acknowledges that with respect to some or all of the Mortgage Loans, the Purchaser intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers. With respect to each Whole Loan Transfer or PassThrough Transfer, as the case may be, entered into by the Purchaser, the Company agrees . . . as of the closing date of the Whole Loan Transfer or Pass-Through Transfer, as the case may be, to restate, for the benefit of the owners of the Mortgage Loans, the representations and warranties contained in Sections 7.01 and 7.02." *E.g.*, July 2002 MLPAISA § 29

- "The Seller acknowledges that with respect to some or all of the Mortgage Loans, EMC intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers. With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by EMC, the Seller agrees . . . to restate, for the benefit of the owners of the Mortgage Loans, the representations and warranties contained in Chapter 11 of the Seller Guide." (Seller Guide § 13.05.)

19.     Thus, not only was First Guaranty aware that EMC intended to sell loans it purchased from First Guaranty to third parties, it was also aware that EMC would be doing so in reliance on the representations and warranties that First Guaranty made in the Agreement.

20.     EMC purchased the mortgage loans and securitized or resold them in reliance on the First Guaranty's representations and warranties in the MLPAs, including, but not limited to:

- "Each Mortgage Loan complies with, and the Company has complied with, applicable local, state and federal laws, regulations and other requirements including, without limitation, usury, equal credit opportunity, real estate settlement procedures, the Federal Truth-In-Lending Act and disclosure laws and consummation of the transactions contemplated hereby, including without limitation, the receipt of interest by the owner of such Mortgage Loan, will not involve the violation of any such laws, rules or regulations. None of the Mortgage Loans are classified as a 'high cost' loan under Section 32 of the Home Ownership and Equity Protection Act of 1994. Each Mortgage Loan is being (and has been) serviced in accordance with Accepted Servicing Practices and applicable state and federal laws, including, without limitation, the Federal Truth-In-Lending Act and other consumer protection laws, real estate settlement procedures, usury, equal credit opportunity and disclosure laws. Company shall maintain in its possession, available for the Purchaser's inspection, as appropriate, and shall deliver to the Purchaser or its designee upon demand, evidence of compliance with all such requirements." *E.g.*, January 2002 MLPAISA Section 7.02(vii).

- "For each Mortgage Loan, the related Mortgage File is complete and contains a true, accurate and correct copy of each of the documents and instruments specified to be included therein." *E.g.*, January 2002 MLPAISA Section 7.02(xxxiv).

- "No fraud, error, negligence, misrepresentation or material omission of fact with respect to a Mortgage Loan has taken place on the part of the Company of the Mortgagor or any other party involved in the origination or servicing of the Mortgage Loan." *E.g.*, January 2002 MLPAISA Section 7.02(xxxviii).

- "Each Mortgage Loan with an LTV (or a Current LTV) greater than 80%, is and will be subject to Primary Mortgage Insurance Policy." *E.g.*, January 2002 MLPAISA Section 7.02(xli).

- "Each Mortgage Loan was originated by or for the Company pursuant to, and conforms with, the Company's underwriting guidelines." *E.g.*, January 2002 MLPAISA Section 7.02(xliii).

- "Each Mortgage Loan with an LTV (or a Current LTV) greater than 80%, is and will be subject to Primary Mortgage Insurance Policy." *E.g.*, January 2002 MLPAISA Section 7.02(xli).

21.     The Seller Guide also included additional loan-level representations and warranties made by First Guaranty, including, but not limited to:

- "For each Mortgage Loan, the related Mortgage File is complete and contains a true, accurate and correct copy of each of the documents and instruments specified to be included therein." (Seller Guide § 11.02(kk).)

- "No Fraud, error, negligence, misrepresentation or material omission of fact with respect to a Mortgage Loan has taken place on the part of the Seller or the Mortgagor or any other party involved in the origination or servicing of the Mortgage Loan." (Seller Guide § 11.02(oo).)

- "Unless set forth on the Mortgage Loan Schedule, no Mortgage Loan has a Loan-to-Value Ratio in excess of 95%. Unless set forth on the Mortgage Loan Schedule, each Mortgage Loan with an LTV greater than 80.00%, is and will be subject to a Primary Mortgage Insurance Policy or Lender Primary Mortgage Insurance Policy issued by a Qualified Insurer which provides coverage in an amount set forth on the Mortgage Loan Schedule and at least equal to that which would be required by Fannie Mae and Freddie Mac if such Mortgage Loan was being delivered for sale to, and/or securitization by, Fannie Mae or Freddie Mac." (Seller Guide § 11.02(rr).)

- "The Seller has no knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause such Mortgage Loan to become delinquent or adversely affect the value or the marketability of the Mortgage Loan." (Seller Guide § 11.02(ss).)

- "Each Mortgage Loan was originated by or for the Seller pursuant to the Seller Guide and the Agreement, and conforms with the Underwriting Guidelines." (Seller Guide § 11.02(tt).)

22.     These representations and warranties were material terms in EMC's agreement to purchase mortgage loans from First Guaranty. If any of First Guaranty's representations and warranties turned out to be false, EMC could have exposure to the third parties to which EMC planned to sell the loans. First Guaranty agreed to indemnify EMC for that exposure.

23.     EMC sold loans to third parties, including certain RMBS trusts and the GSEs, pursuant to pooling and servicing agreements and mortgage loan purchase agreements with those third parties ("PSAs" and, together with the mortgage loan purchase agreements, the "Third Party Agreements").

24.     EMC sold loans, including loans originated by First Guaranty and set forth in Exhibit B, to certain RMBS trusts pursuant to Third Party Agreements between EMC and the trusts, including, but not limited to: the Bear Stearns Asset Backed Securities Trust 2002-2 transaction ("BSABS 2002-2"); the Bear Stearns Asset Backed Securities Trust 2003-1 transaction ("BSABS 2003-1"); the Bear Stearns Alt A Trust II 2007-1 transaction ("BSAAT 2007-1"); the Bear Stearns Asset Backed Securities Trust 2007-AC1 transaction ("BSABS" 2007-AC1"); the Bear Stearns Mortgage Funding Trust 2006-SL1 transaction ("BSMF 2006-SL1); the Bear Stearns Mortgage Funding Trust 2006-AR4 transaction ("BSMF 2007-AR2); the Bear Stearns Mortgage Funding Trust 2007-AR2 transaction ("BSMF 2007-AR2); the Bear Stearns Mortgage Funding Trust 2007-AR3 transaction ("BSMF 2007-AR3); the Bear Stearns Mortgage Funding Trust 2007-AR4 transaction ("BSMF 2007-AR4); the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-8 ("BALTA 2006-8"); the SACO I Trust 2005-10 transaction ("SACO 2005-10"); the SACO I Trust 2006-3 transaction ("SACO 2006-3"); and the SACO I Trust 2006-6 transaction ("SACO 2006-6") (collectively, the "Trusts").

25.     In addition to the Trusts, EMC also sold loans, including loans originated by First Guaranty and set forth in Exhibit B, to the GSEs pursuant to mortgage loan purchase agreements between EMC and the GSEs.

26.     In the Third Party Agreements, EMC made representations to the Trusts and GSEs about the First Guaranty loans being sold that were materially the same as (or in some cases narrower than) the representations First Guaranty made to EMC, including, but not limited to:

- "[T]he information set forth in the Mortgage Loan Schedule hereto is true and correct in all material respects." *E.g.*, Mortgage Loan Purchase Agreement between EMC

Mortgage Corporation and Structured Asset Mortgage Investments II Inc., dated November 20, 2006 ("BSMF 2006-AR4 MLPA") § 7(i).

- "[E]ach Mortgage Loan was originated in accordance with the underwriting guidelines of the related originator." *E.g.*, BSMF 2006-AR4 MLPA" § 7(xxi).

- "[E]ach Mortgage Loan at the time it was made complied in all material respects with all applicable local, state and federal laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all applicable anti-predatory, abusive and fair lending laws." *E.g.*, BSMF 2006-AR4 MLPA" § 7(iii).

- "[T]he Mortgage Loans are currently being serviced in accordance with Accepted Servicing Practices." *E.g.*, BSMF 2006-AR4 MLPA" § 7(xxiv).

- "[T]the related Mortgage File contains each of the documents and instruments listed in Section 2.01 of the Pooling and Servicing Agreement, subject to any exceptions, substitutions and qualifications as are set forth in such Section." *E.g.*, BSMF 2006-AR4 MLPA" § 7(xxiii).

27.     In other words, in reliance on First Guaranty's commitment and obligation to indemnify it for any breaches of First Guaranty's representations, EMC promised third parties that the First Guaranty loans were as First Guaranty represented them to be.

28.     Under the Third Party Agreements, in the event any party discovered a breach of the representations and warranties on any loan, which defect could not be cured and had the requisite effect on the interest of the buyer under the governing documents, EMC had an obligation to repurchase the defective loan or to compensate the Trust or GSE for its losses on that loan.

29.     EMC became aware of breaches of the representations and warranties through a variety of means. In some cases, EMC learned of the breach as a result of a repurchase demand from the trustee of the RMBS trust or the GSE. In other cases, the company providing mortgage insurance for the loan notified EMC of the breach in connection with its rescission or denial of insurance coverage. In still other cases, EMC learned of the breach itself. In each case, EMC's

discovery of the apparent breaches triggered its potential obligations and liability to the third parties.

30.     By way of example only, EMC received demands on the following loans sold by First Guaranty and after research and investigation determined there was a breach that required repurchase:

- Loan ID # 5800701229 in the amount of $434,700.00 with a funding date of January 29, 2007: The borrower was required to have cash asset reserves of $20,397.00. The HUD-1 Settlement Statement indicated that borrower was required to bring $26,737.43 to closing and had deposited a total of $5,000 in earnest money and other deposits. Therefore, the total assets to be verified was $52,134.44. However, the total amount of assets verified was only $10,819.13.     This misrepresentation breached the January 2002 MLPAISA including, without limitation, section 7.02(xxxviii).

- Loan ID # 5800607193 in the amount of $368,000.00 with a funding date of August 1, 2006: The borrower stated on his application that his job title was "Senior Executive." However, his Worknumber Verification of Employment disclosed his job title as "Service Specialist" and not "Senior Executive."  This misrepresentation breached the January 2002 MLPAISA including, without limitation, sections 7.02(xxxviii) and (xliii).

- Loan ID # 5800611197 in the amount of $320,000.00 with a funding date of December 8, 2006: The borrower did not have three active trade lines which had been opened for at least 24 months, as required. Instead the borrower had six prior lines total, of which only two had been open for greater than 24 months.  This misrepresentation breached the January 2002 MLPAISA including, without limitation, sections 7.02 (xxxviii) and (xliii).

- Loan ID # 5800612232 in the amount of $380,800.00 with a funding date of December 27, 2006:  The borrower was required to have cash asset reserves of $8,268.21.  The HUD-1 Settlement Statement indicated that borrower was required to bring $322 to closing and had deposited a total of $1,000 in earnest money and other deposits. Therefore, the total assets to be verified was $9,600.21. However, the total amount of assets verified was only $8,600. Additionally, the Verification of Deposit had red flags, including that (i) the current balance ended in an even zero figure; (ii) the average balance ended in an even zero figure; (iii) it did not contain a fax header reflecting the depository, United Bank; and (iv) the phone number for the depository representative was registered to a private residence.  These misrepresentations breached the January 2002 MLPAISA including, without limitation, sections 7.02(xxxviii) and (xliii).

- Loan ID # 33202027 in the amount of $30,800.00 with a funding date of February 20, 2002:  The mortgage sold carried an interest rate of 13.50%, which exceeded the Tennessee Mandated Rate of 9.34% by 4.16%.  This violated the July 2002 MLPAISA including, without limitation, section 7.02(vii).

The foregoing is not an exhaustive list of the defective loans sold by First Guaranty to EMC.

31.     With respect to the mortgage loans listed in Exhibit B, EMC ultimately determined that there was a breach of one or more representations and warranties in the Third-Party Agreements requiring that EMC repurchase the mortgage loans or indemnify the Third-Party for its losses. These breaches under the Third-Party Agreements also constitute breaches of the representations and warranties made by Seller to EMC. EMC therefore fulfilled its obligations under the Third Party Agreements to repurchase the loans from the Trusts and GSEs or to compensate those parties for their losses on the loans.

32.     EMC incurred losses in excess of $5,588,563.00 for repurchasing defective loans from third parties and compensating third parties for those loans.  EMC has also incurred additional costs and expenses in reviewing, investigating, and addressing the breaches.

33.     First Guaranty is obligated under each of the MLPAs to indemnify EMC for the amounts it paid to repurchase and/or compensate for these defective loans and the related fees and expenses it incurred in connection with these payments and forfeitures.

34.     To the extent additional loans throughout the loan population sold by First Guaranty to EMC contained material defects, EMC additionally asserts claims based on those defective loans.

35.     At various times between 2013 and 2015, EMC notified First Guaranty of First Guaranty's obligation to indemnify EMC for its payments and expenses incurred in connection with the loans identified in Exhibits B.  However, First Guaranty has refused to acknowledge its obligation to indemnify EMC - and has not, in fact, compensated it - for its losses on these loans.

36.    EMC at all times performed all of its obligations to First Guaranty, if any, under the MLPAs, and all conditions precedent to the relief sought in this action, if any, have been satisfied.

## FIRST CAUSE OF ACTION
### (Indemnification for Losses Incurred under the January 2002 MLPAISA against First Guaranty)

37.    Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38.    The January 2002 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

39.    EMC has performed all of its obligations under the January 2002 MLPAISA.

40.    In Section 7.03 of the January 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

41.    In Section 12.01 of the January 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

42.    In Section 11.03.02 of the Seller Guide, which was incorporated into the January 2002 MLPAISA, First Guaranty expressly agreed to indemnify EMC for "any losses, damages,

penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses . . . resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11."

43.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the January 2002 MLPAISA.

44.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

45.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Indemnification for Losses Incurred under the March 2002 MLPAISA against First Guaranty)**

46.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47.     The March 2002 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

48.     EMC has performed all of its obligations under the March 2002 MLPAISA.

49.     In Section 7.03 of the March 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or

-14-

resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

50.     In Section 12.01 of the March 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

51.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the March 2002 MLPAISA.

52.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

53.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### (Indemnification for Losses Incurred under the April 2002 MLPAISA against First Guaranty)

54.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

55.     The April 2002 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

56.     EMC has performed all of its obligations under the April 2002 MLPAISA.

57.     In Section 7.03 of the April 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen,

consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

58.     In Section 12.01 of the April 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

59.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the April 2002 MLPAISA.

60.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

61.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Indemnification for Losses Incurred under the July 2002 MLPAISA against First Guaranty)

62.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.     The July 2002 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

64.     EMC has performed all of its obligations under the July 2002 MLPAISA.

65.     In Section 7.03 of the July 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

66.     In Section 12.01 of the July 2002 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

67.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the July 2002 MLPAISA.

68.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

69.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**(Indemnification for Losses Incurred under the April 2005 MLPAISA against First Guaranty)**

70.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 69 as if fully set forth herein.

71.     The April 2005 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

72.     EMC has performed all of its obligations under the April 2005 MLPAISA.

73.     In Section 7.03 of the April 2005 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

74.     In Section 12.01 of the April 2005 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

75.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the April 2005 MLPAISA.

76.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

77.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
**(Indemnification for Losses Incurred under the October 2005 MLPAISA against First Guaranty)**

78.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79.     The October 2005 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

80.     EMC has performed all of its obligations under the April 2005 MLPAISA.

81.     In Section 7.03 of the October 2005 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

82.     In Section 12.01 of the October 2005 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

83.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the October 2005 MLPAISA.

84.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

85.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(Indemnification for Losses Incurred under the March 2006 MLPAISA against First Guaranty)**

86.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

87.     The March 2006 MLPAISA is a valid and binding agreement between EMC and First Guaranty.

88.     EMC has performed all of its obligations under the March 2006 MLPAISA.

89.     In Section 7.03 of the March 2006 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable and necessary legal fees and related costs, and other actual expenses as the direct and proximate result of any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Section 7."

90.     In Section 12.01 of the March 2006 MLPAISA First Guaranty expressly agreed to indemnify EMC for "actual losses, damages (other than any damages relating to unforeseen, consequential or punitive damages), reasonable legal fees and related costs, and other actual expenses that the Purchaser . . . may sustain as the direct and proximate result of ... (iv) for breach of any covenant, representation or warranty of the Company contained herein."

91.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached First Guaranty's representations and warranties under the March 2006 MLPAISA.

92.     EMC has provided First Guaranty with notice of EMC's right to indemnification for these amounts, and First Guaranty has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

93.     As a result of First Guaranty's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.      An award of damages according to proof;

B.      Prejudgment interest, costs and fees to the extent allowable by law or contract; and

C.      Such other and further relief as the Court may determine to be just and proper.

## JURY TRIAL DEMAND

EMC demands a trial by jury for all issues so triable as a matter of right.

## [SIGNATURE PAGE FOLLOWS.]

Respectfully Submitted,

EMC MORTGAGE LLC f/k/a
EMC MORTGAGE CORPORATION
By counsel

Dated:  June 22, 2016

NELSON MULLINS RILEY & SCARBOROUGH LLP

_____

Nathan I. Brown, Esq., VSB No. 65304
E-mail:  nathan.brown@nelsonmullins.com
Erika Karnaszewski Fedelini, Esq., VSB No. 76031
E-mail:  Erika.karnaszewski@nelsonmullins.com
Sarah Reimers McIntee, Esq., VSB No. 72249
E-mail:  Sarah.mcintee@nelsonmullins.com
949 3rd Avenue, Suite 200
Huntington, West Virginia 25701
Telephone:  (304) 526-3518
Facsimile:  (304) 526-3581

-and-

Eric N. Whitney (*pro hac vice* pending)
E-mail:  eric.whitney@kayescholer.com
Jeffrey A. Fuisz (*pro hac vice* pending)
E-mail:  jeffrey.fuisz@kayescholer.com
Aaron F. Miner (*pro hac vice* pending)
E-mail:  aaron.miner@kayescholer.com
Joseph F. Clark (*pro hac vice* pending)
E-mail: joseph.clark@kayescholer.com
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212)-836-8689

*Counsel for EMC Mortgage LLC f/k/a*
    *EMC Mortgage Corporation*